# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NORTH CAROLINA
# WESTERN DIVISION

## No. 5:22-CR-153-D

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | **GOVERNMENT'S RESPONSE IN** |
| v. ) | **OPPOSITION TO DEFENDANT'S** |
| ) | **MOTION TO SUPPRESS** |
| **BRAXTON DEANGELO BENTON** ) | |

The United States of America, by and through the United States Attorney for the Eastern District of North Carolina, herein files this brief in opposition to the Defendant Braxton D. Benton's (Defendant) Motion to Suppress and Incorporated Memorandum of Law. [D.E. 43]. For the reasons set forth below, the Government respectfully requests that Defendant's Motion be denied.

## PROCEDURAL SUMMARY

On June 28, 2022, Defendant was charged by a federal grand jury in two counts of a five-count indictment for willfully engaging in the business of dealing in the sale of firearms without a license in violation of 18 U.S.C. §§ 922(a)(1)(A), 924(a)(1)(D) (Count Four); and being a convicted felon in possession of ammunition in violation of 18 U.SC. §§922(g)(1) and 924 (Count Five). [D.E. 1]. In addition, Defendant's co-defendant, Takara Wilson was indicted for knowingly transferring possession of a firearm to Defendant, knowing he is a convicted felon, in violation of 18 U.S.C. §§ 922(d) and 924(a)(2) (Count Three). On October 12, 2022, Defendant filed the instant Motion to Suppress. [D.E. 43].

## FACTUAL SUMMARY

The evidence at a suppression hearing or trial would show the following: On January 18, 2022, around 4:10 p.m., Officer Beaton with the Raleigh Police Department (RPD) observed a black Acura sedan (NC: JBM-3720) traveling north on Raleigh Blvd. Officer Beaton noted

that the window tint on the vehicle was so dark he could barely make out the outline of the driver. Officer Beaton ran the vehicles tags through the DCI system and it returned a revoked notification. *See* Gov. Exhibit 1. Officer Beaton stated that the revocation notification referred to the registered owner's concealed handgun permit, but he was not able to determine this until later, after the traffic stop had been completed. Officer Beaton was able to confirm, based on his training and experience, that the tint on the vehicle was well below the legal limit of thirty five percent (35%). Immediately upon approaching the vehicle, Officer Beaton detected the strong odor of fresh marijuana emanating from the vehicle. After being informed for the reason for the stop, Defendant stated he a had blunt in the ashtray and held it up for the officer to see. Defendant also admitted that there was a bag of marijuana in the vehicle, when asked if there was anything else inside the vehicle. Defendant was then asked to step outside of the vehicle and a probable cause search was conducted.

A search of the vehicle yielded, $900 US Currency on his person, a marijuana blunt in the ashtray, a bag containing 28 grams of MJ and a counterfeit $100 bill in the cubby under the center console. Inside the center console, officers found documents with Defendant's name on it and a box of .40 caliber ammunition. After the ammunition was found, Defendant was asked if there was a firearm in the vehicle to which he replied "No." The trunk of the vehicle was searched, and a child's backpack was found containing 133 grams of marijuana. A polymer 80 (ghost gun) was located between the fabric liner and sidewall of the trunk wrapped in a pair of pants. Defendant then claimed that the firearm was his girlfriends, and that the marijuana was CBD. Defendant was then arrested and transported to a RPD police station. Officer Beaton contacted Defendant's girlfriend and co-defendant, Takara Wilson, and she denied owning a firearm that resembled a black Glock and stated that there should not have been any firearms in her vehicle. Wilson then denied knowledge of Defendant being

a convicted felon and being forbidden from being around firearms (contradicting what she told officers in the December interview). Defendant was Mirandized and refused to talk but he was allowed to retrieve numbers from his phone. While he was doing this, he received a text message from someone seeking to purchase marijuana. Following a waiver of the detention hearing, Defendant was detained pending trial. [D.E. 18].

Defendant now seeks to suppress the physical evidence and statements obtained from the stop and subsequent search on grounds that the stop violated his Fourth Amendment rights under the United States Constitution.

**ARGUMENT**

The Court should deny the motion in its entirety. Officer Beaton acted justifiably and constitutionally in every phase of this encounter. The Fourth Amendment of the United States Constitution protects against unreasonable searches and seizures. *U.S. Const. Amend. IV*. "A traffic stop constitutes a seizure under the Fourth Amendment and thus must be justified by reasonable suspicion of criminal activity or some other exception to the generally applicable warrant requirement." United States v. Feliciana, 974 F.3d 519, 522 (4th Cir. 2020). An officer only needs reasonable suspicion of criminal activity before conducting a traffic stop. Id. at 522; United States v. Arvizu, 534 U.S. 266, 273-75 (2002). The Supreme Court has recognized that reasonable suspicion is "a less demanding standard than probable cause and requires a showing of considerably less than a preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123 (2000).

In evaluating a challenge to a traffic stop, the court should analyze first, whether the initial stop was justified, and second, whether the actions of law enforcement were reasonably related in scope to the justification for the stop. Terry v. Ohio, 392 U.S. 1 (1968); United States v. Palmer, 820 F.3d 640, 648-49 (4th Cir. 2016).

With respect to the first question, it is well established that an officer may stop and briefly detain a person for investigative purposes (known as investigative or Terry stop) when there is "reasonable suspicion," based on articulable facts, that criminal activity is afoot. Wardlow at 119 (2000); Terry v. Ohio, 392 U.S. 1 at 30 (1968). It is further established, that upon observing a traffic violation, an officer may conduct a traffic stop. *See* United States v. Williams, 740 F. 3d 308, 312 (4th Cir. 2014); United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008) ("Observing a traffic violation provides sufficient justification for a police officer to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop."); United States v. El, 5 F.3d 726, 730 (4th Cir. 1993) ("When an officer observes a traffic offense . . . he or she is justified in stopping the vehicle.").

It is also clear that a "minor" traffic violation is sufficient to form the basis for a lawful traffic stop. *See* United States v. Palmer, 820 F.3d 640, 650 (4th Cir. 2016) ("[I]llegally tinted windows are alone 'sufficient to justify' a traffic stop."). *See also* Kansas v. Glover, 140 S. Ct. 1183, 1190 (2020) (driving with revoked license); Illinois v. Caballes, 543 U.S. 405, 406 (2005) (speeding); United States v. Williams, 808 F.3d 238, 246 (4th Cir. 2015) (speeding); United States v. Harvey, 269 F. App'x 329, 330 (4th Cir. 2008) (per curiam) (failure to use turn signal) (unpublished); United States v. Johnson, 734, F.3d 270 (4th Cir. 2013) "[o]bserving a traffic violation provides sufficient justification for a police officer to detain the offending vehicle." Branch, 537 F.3d at 335; *see also* United States v. Digiovanni, 650 F.3d 498, 506 (4th Cir. 2011). Finally, if an officer makes a traffic stop based on a mistake of fact, the only question is whether his mistake of fact was reasonable." United States v. Arias, 213 Fed Appx 230 (4th Cir. 2007) (citing United States v. Chanthasouxat, 342 F.3d 1271 (11th Cir. 2003). The court in Chanthasouxat stated that a court's determination of the reasonableness of an officer's mistake of fact, "will be

completely dependent on the specific and usually unique circumstances presented by each case." Id. at 1277.

### A. THE TRAFFIC STOP WAS JUSTIFIED BY THE OFFICER'S REASONABLE MISTAKE OF FACT THAT DEFENDANT HAD COMMITTED A TRAFFIC VIOLATION BY DRIVING A VEHICLE WITH EXPIRED TAGS AND THUS REASONABLE SUSPICION DEFENDANT WAS ENGAGING IN CRIMINAL CONDUCT.

In United States v. Cashman, the Seventh Circuit opined that "the Fourth Amendment requires only a reasonable assessment of the facts, not a perfectly accurate one." United States v. Cashman, 216 F. 3d 582 (7th Cir. 2000). In Cashman, the Seventh Circuit found that an officer had probable cause to stop a car with a seven to ten inch crack in the windshield under a state law that required that no vehicle's windshield be "excessively cracked or damaged." Cashman, 216 F.3d at 586 (quoting WIS. ADMIN. CODE § Trans. 305.34(3) (1997) (internal quotations omitted). The Wisconsin Code further specified exactly what constituted an excessive crack or damage, and Cashman argued that the crack in his windshield did not meet that criteria. Id. at 586-87. The Seventh Circuit held that even if "[c]areful measurement after the fact . . . reveal[ed] that the crack" was not excessive, the police officer still had probable cause to stop Cashman. Id. Furthermore, a traffic stop based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment. Saucier v. Katz, 533 U.S. 194, 205, 121 S. Ct. 2151, 2158, 150 L. Ed. 2d 272 (2001). Thus, if an officer makes a traffic stop based on a mistake of fact, the only question is whether his mistake of fact was reasonable. Great deference is given to the judgment of trained law enforcement officers "on the scene." *See* Saucier, 533 U.S. at 205-206, 121 S. Ct. at 2158 (discussing excessive force claims while noting that excessive force and probable cause questions are subject to the same Fourth Amendment analysis). "The principal

components of a determination of reasonable suspicion or probable cause will be . . . viewed from the standpoint of an objectively reasonable police officer . . . ." Id.

In the instant case, Officer Beaton typed in the license plate tag in a system designed to run and evaluate the validity of NC tags and received a "revoked" alert. Only after the fact was it was discovered that the alert was actually for the registered owner, Takara Wilson's, concealed carry permit. As evidenced in Government's Exhibit 1, the system provides no further information on its face. Notably, as of October 14, 2022, when Officer Beaton again ran the tags to the vehicle, the same "revoked" alert pops up in the computer. *See* Gov. Exhibit 1. An officer's mistake of fact may provide the objective basis for reasonable suspicion or probable cause under the Fourth Amendment because of the intensely fact-sensitive nature of reasonable suspicion and probable cause determinations. Ornelas v. United States, 517 U.S. 690, 695, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996). Instead, by the very way it is written the Fourth Amendment more often requires us to assess the government's actions in each case as it comes to us against "commonsense, nontechnical conceptions that deal with the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *See* Id. at 1661 (internal quotation marks omitted). The Supreme Court has noted that "precisely what 'reasonable suspicion' and 'probable cause' mean is not possible" because they "are . . . fluid concepts that take their substantive content from the particular contexts in which the standards are being assessed." Id. The Court has also noted its "long-established recognition that standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application." Ker v. California, 374 U.S. 23, 33, 83 S. Ct. 1623, 1630, 10 L. Ed. 2d 726 (1963). Thus, an officer's mistaken assessment of facts need not render his actions unreasonable because what is reasonable will be completely

dependent on the specific and usually unique circumstances presented by each case. See Ornelas, 116 S. Ct. at 1661-62.

In the instant case, when questioned why the revocation alert was not furthered explored, Officer Beaton explained "that the light turned green, and he felt he had understood the DCI to report the tags as being revoked." The Seventh Circuit also noted that "so long as the circumstances confronting a police officer support the reasonable belief that a driver has committed even a minor traffic offense, the officer has probable cause to stop the driver." Id. at 586. The government respectfully urges this court to follow the Seventh Circuit and make a similar determination that the circumstances confronting Officer Beaton also supported a reasonable belief that Defendant had committed a NC Chapter 20 offense, thus giving probable cause to stop Defendant.

### B. IF THE COURT DETERMINES THE OFFICER'S MISTAKE OF FACT WAS UNREASONABLE, DEFENDANT'S WINDOW TINT WAS STILL A VIOLATION GIVING RISE TO A TRAFFIC STOP ROOTED IN REASONABLE SUSPICION.

Defendant next contends that Officer Beaton did not factor the window tint in his reasonable suspicion analysis of the stop and more importantly that the window tint did not violate North Carolina law. [D.E. 43]. Defendant makes the claim that Officer Beaton's report was written after the stop and arrest, and after he discovered the mistake [of fact] regarding the car's registration status. Id. It should be well accepted that an officer will never have the opportunity to write a report prior to an interaction with a subject. More importantly, Officer Beaton clearly stated in his report that it was the vehicle's extremely dark tint that first drew his attention to the vehicle; describing it as, "tint so dark I could barely even make out the outline of the driver." *See* Gov. Exhibit 4. It was only then that he ran the tags through the DCI system and received the revocation alert. The Fourth Circuit has held that "[w]ithout question," a failure to comply with traffic laws warrants an initial vehicle stop. United States

v. Palmer, 820 F.3d 640, 649 (4th Cir. 2016). Thus, it is well established that a traffic violation, such as a window tint violation is enough to effectuate a brief detention of a vehicle. *See* United States v. Palmer, 820 F.3d 640, 650 (4th Cir. 2016) ("[I]llegally tinted windows are alone 'sufficient to justify' a traffic stop.") United States v. Johnson, 734, F.3d 270 (4th Cir. 2013) "[o]bserving a traffic violation provides sufficient justification for a police officer to detain the offending vehicle."; *see also* United States v. Digiovanni, 650 F.3d 498, 506 (4th Cir. 2011).

In support of his claim that the tint was not illegal, Defendant offers an inspection that was done *forty-one* (41) days after the traffic stop had occurred to state that the window's tint was only thirty two percent (32%). *See* Def. Exhibit G. As clearly displayed from the body worn camera footage and the still images provided below, it was broad daylight (approx. 4:10 pm), and it is nearly impossible to see inside Defendant's vehicle. *See* Gov. Exhibits 2, 3. Officer Beaton further confirms his window tint suspicion when stated in his report, "upon approaching the vehicle I confirmed that the window tint was excessively dark on the vehicle . . . based on my training and experience this window tint was well below the legal limit of thirty five percent." *See* Gov. Exhibit 4. Reasonable articulable suspicion may be established by a series of acts, each of them perhaps innocent when viewed separately, but when viewed in the aggregate by a trained police officer warrant further investigation. United States v. McHugh, 349 F. App'x 824, 827 (4th Cir. 2009). In assessing whether reasonable suspicion existed, the facts, whether seemingly innocent or obviously incriminating, are to "be assessed in light of their effect on the respective officer's perception of the situation at hand." United States v. McCoy, 513 F.3d 405, 414 (4th Cir. 2008). Even when each fact alone may be susceptible of an innocent explanation, "the question is whether taken together, they are sufficient to form a particularized and objective basis for an officer's suspicions." United

States v. Black, 525 F.3d 359, 365-66 (4th Cir. 2008) (internal quotation marks and alteration omitted). In the instant case, a vehicle was observed in broad daylight, in a high crime area, displaying window tint so dark the officer could not see inside, and the officers computer gave a revocation alert when prompted by entering the tag number; therefore, under the totality of the circumstances, the government urges this Court to rule that Officer Beaton had an articulable, reasonable suspicion that the Acura, as presented, violated North Carolina law.

The investigative stop of Defendant's vehicle was within the bounds of the law and supported by articulate, reasonable suspicion. Accordingly, this Court should conclude that Defendant's vehicle was properly stopped and there was no violation of his Fourth Amendment rights. Respectfully, this Court should also rule that the stop was legally supported by reasonable suspicion and the results of the search are not subject to suppression.

(Remainder of page left intentionally blank)

## CONCLUSION

Because the officer made a reasonable mistake of fact, the evidence was obtained lawfully based on a *Terry* stop supported by reasonable suspicion, all statements and evidence obtained are not subject to suppression. In the alternative, because Defendant was operating a vehicle with illegal window tint, the United States respectfully requests that the court rule there was still reasonable suspicion to stop the vehicle and deny Defendant's Motion to Suppress.

Respectfully submitted this 26th day of October 2022.

        MICHEAL F. EASLEY, JR.
        United States Attorney

BY:   /s/ Brandon L. Boykin
       Brandon L. Boykin
       Assistant United States Attorney
       U.S. Attorney's Office
       150 Fayetteville Street, Suite 2100
       Raleigh, NC 27601
       Phone: 919-856-4897
       Brandon.Boykin@usdoj.gov

CERTIFICATE OF SERVICE

I do hereby certify that I have this 26th day of October 2022, served a copy of the foregoing upon the below-listed party by electronically filing the foregoing with the Court on this date using the CM/ECF system or placing a copy in the United States Mail to the following:

James R. Saunders
Assistant Federal Public Defender
150 Fayetteville Street, Suite 450
Raleigh, NC 27601
Email: James_Saunders@fd.org

                    MICHAEL F. EASLEY, JR.
                    United States Attorney

BY:    /s/ Brandon L. Boykin
        Brandon L. Boykin
        Assistant United States Attorney
        U.S. Attorney's Office
        150 Fayetteville Street, Suite 2100
        Raleigh, NC 27601
        Phone: 919-856-4897
        Brandon.Boykin@usdoj.gov

Government's Exhibit 1



Government's Exhibit 2



Government' Exhibit 3



Government's Exhibit 4

## Offense/Incident Report (Continuation)

**Incident**

| Date/Time Reported | Incident Start Date/Time | Incident End Date/Time | Incident Number |
|---|---|---|---|
| 01/18/2022 16:13 | 01/18/2022 16:10 | 01/18/2022 16:40 | P22003106 |

**Officer Narrative**

On 1/18/2022 I was assigned to the Raleigh Police Department Flex team and was conducting proactive patrol within the area of Raleigh Blvd and New Bern Ave.

I observed a black Acura (JBM-3720) traveling north on Raleigh Blvd. The window tint on the vehicle was so dark that I could barely even make out the outline of the driver. I ran the tag through DCI and the DCI return displayed a revoked notification. It should be noted that it was later determined that the revoked notification on DCI referred to the status of the CHP permit for the registered owner. I initiated a traffic stop as the vehicle crossed over New Bern Ave and the vehicle pulled to the side of the road between New Bern Ave and Oakwood Ave. I then approached the vehicle and spoke with the driver and sole occupant (Braxton). Upon approaching the vehicle I confirmed that the window tint was excessively dark on the vehicle. I have conducted numerous investigations involving illegal window tint while utilizing a window tint meter and based on my training and experience this window tint was well below the legal limit of 35%. Immediately upon approaching the vehicle I detected the strong odor of fresh marijuana emanating from the vehicle. I have conducted countless investigations involving marijuana throughout my career and am familiar with the distinct odor that this drug emits. I informed Braxton of the reason for the stop and he advised that this was his girlfriends vehicle. Braxton then stated that he had a blunt in the ashtray and held it up. I asked him if there was anything else inside the vehicle and he advised that there was a bag of weed as well. I then instructed Braxton to turn the vehicle off and I stepped him out of the vehicle. Braxton had no contraband on his person and he was seated on the curb behind the vehicle. Braxton had a cell phone on his lap that was plugged into a charger while the traffic stop was being conducted.

I then began conducting a probable cause search of the vehicle. The blunt that he held up was in a cupholder ashtray directly in front of the center console. I located a ziploc bag containing 28g of marijuana under the dash cubby section in the center of the vehicle. Based on my training and experience the weight of this marijuana and the way it was packaged is consistent with the sale of one ounce of marijuana. Also in this cubby area I located a counterfeit $100 bill. This bill was easily identifiable as counterfeit based on the feel of the bill, and the ink was already fading. Inside the center console I located documents with Braxton's name as well as a box of .40 ammunition. A box for a digital scale was located, however the scale was not in the box. Upon locating the ammunition I asked Braxton if there was a firearm in the vehicle. Braxton advised that there was not and that the ammunition was for a firearm that used to belong to his girlfriend, but stated that they had sold the firearm recently. Braxton volunteered that the box of ammunition was .40 caliber. It should be noted that Braxton is a convicted felon and is not allowed to possess firearms or ammunition. Inside Braxton's wallet was a large sum of currency ($990). I continued searching the passenger area of the vehicle and no other contraband was located.

I then popped the trunk of the vehicle and began to search a child's backpack that was in the trunk. Prior to opening the bag Braxton advised that there was marijuana inside. I opened the bag and located a large vacuum sealed bag that contained 133g of marijuana. I then placed Braxton under arrest for PWISD marijuana. Braxton was seated in the back of my police vehicle and I continued searching the vehicle. Also inside the trunk between the fabric liner and the sidewall of the vehicle a black Polymer 80 9mm "ghost gun" was located wrapped up in a pair of pants. No other contraband was located during the course of the search. I placed the confiscated items into evidence

| Investigating Officer | Date | Supervisor | Date |
|---|---|---|---|
| SO BEATON, T (3615) | 01/18/22 | | |

4 of 7